# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| SHERRIE BOHANNON,<br>   Plaintiff,<br><br>  v.<br><br>CAROL COLVIN,<br>Acting Commissioner of the<br>Social Security Administration,<br>   Defendants. | )<br>)<br>)<br>)  CAUSE NO. 2:15-CV-111-JEM<br>)<br>)<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Sherrie Bohannon on March 20, 2015, and Plaintiff's Opening Brief [DE 19], filed by Plaintiff on August 27, 2015. Plaintiff requests that the decision of the Administrative Law Judge be reversed or remanded for further proceedings. On December 2, 2015, the Commissioner filed a response, and Plaintiff filed a reply on December 10, 2015. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On January 31, 2012, Plaintiff filed an application for disability and disability insurance benefits alleging that she became disabled on January 1, 2010. Plaintiff's application was denied initially and upon reconsideration. On July 30, 2013, Administrative Law Judge ("ALJ") Romona Scales held a hearing at which Plaintiff, with counsel, and a vocational expert testified. On November 26, 2013, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

  1.  The claimant met the insured status requirements of the Social Security Act through March 31, 2015.

  2.  The claimant has not engaged in substantial gainful activity

> since January 1, 2010, the alleged onset date. (20 C.F.R. §§ 404.1571 et seq., 416.971 et seq.).
>
> 3. The claimant has the following severe impairments: history of back injury, status post laminectomy, and discectomy fusion surgery (20 C.F.R. § 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1. (20 CFR §§ 404.1520(d), 404.1525, 404.1526).
>
> 5. The claimant has the residual functional capacity ("RFC") to perform less than sedentary work as defined in 20 C.F.R. 404.1567(a). Specifically, the claimant can lift and carry ten pounds occasionally and less than ten pounds frequently. The claimant can sit for six hours and stand and/or walk for two hours for a total of eight hours in a standard workday. The claimant must be allowed to shift between sitting and standing for at least ten minutes every hour. The claimant can occasionally climb stairs and ramps, but cannot climb ladders, ropes or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, crawl. The claimant is limited to occasional overhead reaching bilaterally. The claimant must avoid concentrated exposure to extremes in temperature, wetness, and pulmonary irritants. The claimant must avoid concentrated exposure to slippery, wet, uneven surfaces, hazards, and extreme cold.
>
> 6. The claimant is capable of performing past relevant work as a document preparer. This work does not require the performance of work-related activities precluded by the claimant's residual capacity. (20 CFR § 404.1565).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2010, through the date of this decision. (20 C.F.R. § 404.1520(f)).

On January 16, 2015, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate

Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

In 2006, Plaintiff hurt her back lifting a set of encyclopedias. An MRI of Plaintiff's spine revealed an L4-L5 lumbar herniation. Dr. Sweeney, Plaintiff's treating physician at that time, treated Plaintiff with an epidural steroid injection, a support corset, and prescribed a cane for use when ambulating. Dr. Sweeney also ordered that Plaintiff not work while her injury healed. Initially, Plaintiff reported that Dr. Sweeney's treatments improved her symptoms. An MRI and CT scan performed in early 2007 did not show any worsening of Plaintiff's herniation. However, during an exam on May 27, 2007, Plaintiff reported to Dr. Sweeney that she was suffering from persistent pain in her back and left leg and was unable to drive because she was unable to feel the gas pedal or brake. Dr. Sweeney recommended that Plaintiff have fusion surgery to repair the L-4-L-5 herniation.

On January 12, 2009, Plaintiff underwent fusion surgery. Plaintiff at first reported that the surgery improved her back pain, muscle strength, and mobility. In May 2009, Plaintiff's back x-ray showed signs of healing and Plaintiff reported that her symptoms were still improving with some residual complaints. On August 19, 2009, Dr. Sweeney cleared Plaintiff for full-time work and she returned to near full-time employment.

However, by late 2009, her symptoms had returned. In September 2009, Plaintiff reported to Dr. Sweeney she again had limited feeling in her legs. Dr. Sweeney found that she had poor sensation to soft touch. On April 7, 2010, a CT scan showed Plaintiff had pseudoarthrosis of the

lower back and that the surgical fusion of her L-4-L-5 had not healed. Dr. Sweeney offered Plaintiff a surgical revision, which she declined. Dr. Sweeney amended Plaintiff's work schedule to four days a week and six hours a day, with position changes between sitting and standing as needed. On July 20, 2011, Dr. Sweeney examined Plaintiff and found that she continued to have diminished sensation to soft touch in her left leg, tenderness over the surgical site, and pain with range of motion. On August 31, 2011, Dr. Sweeney noted that Plaintiff was in obvious discomfort when she transitioned from standing to sitting, that the results of her most recent CT scan appeared to show that only some areas of the surgery site may have successfully fused, and that Plaintiff was transitioning toward recovery. Dr. Sweeney continued Plaintiff's work restrictions.

On November 16, 2011, Dr. Sweeney again examined Plaintiff. X-rays of the surgical site showed that Plaintiff was stable, but the L-4-L-5 surgery site had still not fully fused. Dr. Sweeney last examined Plaintiff on January 11, 2012. At that examination, Dr. Sweeney stated that Plaintiff continued to complain of lower back pain, which was 7-8 on a scale of 10 in severity. Dr. Sweeney stated that X-rays performed that day showed some signs that Plaintiff may have a healed fusion, but there was also a strong chance of continued pseudoarthrosis. Dr. Sweeney diagnosed Plaintiff with a likely failed fusion with persistent complaints and prescribed several medications for pain management. Dr. Sweeney stated that if his diagnosis was correct, Plaintiff should expect to have pain for the rest of her life and continue to have significant difficulty with work. Dr. Sweeney continued Plaintiff's work restrictions of six-hours a day, four days a week, and directed that Plaintiff be permitted to change position between sitting and standing as needed.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and

indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734–35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the

important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have

an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, an ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing S.S.R. 96–8p, 1996 WL 374184 (July 2, 1996)); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff argues that the ALJ failed to give sufficient weight to Plaintiff's treating medical provider, Dr. Sweeney, and failed to articulate a supportable basis for the step four finding that Plaintiff can perform her past work as a document preparer. The Commissioner contends that the ALJ properly accounted for Dr. Sweeney's opinion and substantial evidence supports the ALJ's

RFC finding.

1. <u>Weight to Physician</u>

Plaintiff argues that the ALJ erred in failing to give Dr. Sweeney's opinion that Plaintiff was incapable of working full time controlling weight. The Commissioner argues that the ALJ properly considered Dr. Sweeney's opinion, but correctly concluded that his opinion was entitled to little weight because it was inconsistent with other evidence in the record.

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). Being "not inconsistent" does not require that opinion be supported directly by all of the other evidence "as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." S.S.R. 96–2p, 1996 WL 374188, at *3 (July 2, 1996). To be "substantial," conflicting evidence "need only be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Schmidt*, 395 F.3d at 744. In particular, an ALJ may not simply ignore an opinion that addresses a plaintiff's ability to work, but must "evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." S.S.R. 96–5p, 1996 WL 374183, at *3, *5 (July 2, 1996); *see also Hamilton v. Colvin*, 525 F. App'x 433, 439 (7th Cir. 2013) ("While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, a treating physician's opinion that a claimant is disabled 'must not be disregarded.'") (quoting S.S.R. 96–5p) (citing 20 C.F.R. § 416.927(e)(2)); *Roddy*, 705 F.3d at 636 ("Even though the ALJ was not required to give [the treating physician]'s opinion [that the claimant

8

could not handle a full-time job] controlling weight, he was required to provide a sound explanation for his decision to reject it.").

If an ALJ declines to give a treating source's opinion controlling weight, he must still determine what weight to give it according to the following factors: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6); *see also* 20 C.F.R. § 404.1527(a)(2)(c)(2)(ii)(5) (an ALJ is required to grant more weight to a treating specialists when the medical issue is related to their area of expertise ); *see also* 20 C.F.R. § 404.1527(c)(2)(ii)(5) (an ALJ is required to consider the length, nature, and extent of a treating providers relationship with the plaintiff and the frequency of his examinations). "[W]henever an ALJ . . . reject[s] a treating source's opinion, a sound explanation must be given for that decision." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

The ALJ stated that she gave the opinion of Dr. Sweeney, Plaintiff's treating physician, little weight because his opinion was inconsistent with the objective medical record and because she believed that Dr. Sweeney had amended Plaintiff's diagnoses and work restrictions based on Plaintiff's increased allegations of pain, rather than on the actual medical findings. The ALJ also gave little weight to Dr. Sweeney's opinion that Plaintiff's fusion surgery had not healed on the grounds that the opinion was inconsistent with his findings that Plaintiff's August 2011 CT scan showed that her fusion surgery had healed and was stable and with an x-ray performed in January

9

2012 that revealed signs of healing and no loosening of surgical hardware. The ALJ gave some weight to gave some state independent medical examiner, Dr. Levin, and great weight to state independent examiners Dr. Brill and Dr. Ruiz.

As a threshold matter, the ALJ was not free to speculate that Dr. Sweeney amended Plaintiff's work restrictions solely based on her complaints of pain, rather than on his actual medical findings. *See Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999) (holding in part that an ALJ's speculation cannot substitute for evidence and a decision based on speculation is not supported by substantial evidence). Moreover, the evidence of record does not support the ALJ's claim. In early 2009, Dr. Sweeney cleared Plaintiff for full-time work shortly after her fusion surgery and after she reported that her symptoms had improved. Plaintiff then secured full-time or near full-time employment. When Plaintiff complained later that year that her pre-surgery symptoms of pain had returned, Dr. Sweeney did not reduce her work availability. In fact, Dr. Sweeney did not change her full-time work status – despite examining Plaintiff on an almost monthly basis and noting her constant complaints of pain – until after her April 2010 CT scan showed that her fusion surgery had not fully healed and she was suffering from pseudoarthrosis. Fundamentally, the ALJ was not free to impute a factually unsupported alternative explanation as to why Dr. Sweeney continued Plaintiff's work restrictions for as long as he did. *See Wilder v. Chater*, 64 F.3d 335, 338 (7th Cir. 1995) (holding that Plaintiff was entitled to a decision based on the record and not a hunch); *Adams v. Astrue,* No. 2:08-CV-79-APR, 2009 WL 2986966, at * 9 (Sept. 14, 2009) (reasoning that an ALJ "may draw reasonable inferences, but presumptions, speculations, and suppositions must not be drawn.").

The ALJ also misconstrued Dr. Sweeney's 2011 finding. Dr. Sweeney did not find that

Plaintiff's August 2011 CT scan showed that her fusion surgery had healed and was stable; rather, Dr. Sweeney stated that several areas of the L4-L5 fusion surgery *may have* successfully fused and that Plaintiff *appeared* to be on her way to recovery. Even if Dr. Sweeney had found that Plaintiff's August 2011 CT scan showed that her surgery was healed, the ALJ acknowledged that Dr. Sweeney found that her 2012 CT scan showed that her surgery was not healed, but revealed *signs* of healing. Accordingly, the ALJ's stated reason for discounting Dr. Sweeney's opinion is unsupported by the record and also raises concerns that the ALJ was making her own medical determination in concluding that Plaintiff's fusion surgery was actually fully healed. *See Punzio*, 630 F.3d 704, 710 (7th Cir. 2011) (holding that an ALJ must provide a sound explanation for rejecting treating physician's opinion); *Myles v. Astrue*, 582 F.3d at 677–78 (7th Cir. 2009) (stating that the ALJ impermissibly "play[ed] doctor" when he substituted his lay opinion for a physician's opinion regarding a medical condition); *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) (warning ALJs to avoid the temptation of playing doctor and advising ALJs to rely on expert opinions); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (holding that ALJ's must avoid making their own medial finding).

The ALJ also failed to address the other factors that must be considered when weighing the opinion evidence of Dr. Sweeney, including speciality, the length, nature, and extent of his five-year relationship with Plaintiff, or the frequency of his nearly monthly examinations of her. *See* 20 C.F.R. §§ 404.1527(a)(2)(c)(2)(ii)(5) and 404.1527(c)(2)(ii)(5). Rather than give great weight or controlling weight to Plaintiff's treating source, orthopedic surgeon Dr. Sweeney, the ALJ gave greater weight to the opinion of state examining physician Dr. Levin, who made a single examination of Plaintiff. Also troubling about the weight given to Dr. Levin's opinion is the fact

that the ALJ expressed genuine doubt regarding some of Dr. Levin's findings. Specifically, Dr. Levin stated that Plaintiff's complaints of symptom severity were "way out of proportion" to her alleged injury and that Plaintiff could work without limitation, a conclusion that the ALJ found to be "unreasonable" in light of "Plaintiff's history of back pain." AR 23. As stated, the Court is left unable to trace the ALJ's reasoning: she found that Dr. Sweeney's conclusions were not consistent with the record but used Dr. Sweeney's notation that he seemed to suspect that some of Plaintiff's complaints of pain were mental in support of Dr. Levin's opinion. How the ALJ simultaneously discounted treating physician Dr. Sweeney's opinion, but used it as a reason to afford greater weight to state examiner Dr. Levin's opinion is an inconsistency in logic that must be resolved.

Accordingly, this case is being remanded On remand, the ALJ is directed to reconsider the weight afforded to the opinion of Plaintiff's treating physician, Dr. Sweeney, and reconsider the weight afforded to his findings regarding Plaintiff's unhealed surgical site, his diagnosis of pseudoarthrosis, and the limitations attendant to psedoarthrosis including loss of sensation, numbness, and postural limitations.

2.  Residual Functional Capacity

Plaintiff argues that the ALJ failed to adequately explain her consideration of Plaintiff's limitations caused by her impairments. In particular, Plaintiff argues that the ALJ did not properly analyze Dr. Sweeney's restrictions to a four day work week of her discomfort when transitioning from sitting to standing. The Commissioner argues that substantial evidence supported the ALJ's decision.

The RFC is an assessment of what work-related activities the claimant can perform despite her limitations. *Young*, 362 F.3d 1000, 1002; *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1).

In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3).

According to SSA regulations, the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. S.S.R. 96–8p at *7.

Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 871 (7th Cir. 2000); *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In other words, the ALJ must build an "accurate and logical bridge from the evidence to his conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

At step four, the ALJ found that Plaintiff could preform less than sedentary work and must be provided an opportunity to shift between the sitting and standing positions for at least ten minutes every hour. Dr. Sweeney observed that Plaintiff was in obvious discomfort when transitioning from sitting to standing positions, but, as described above, the ALJ afforded little weight to his opinion,

and no other medical source opined as to Plaintiff's need to transition between sitting and standing. As it stands, the Court is uncertain what evidence the ALJ based this limitation on and is unable to trace an "accurate and logical bridge from the evidence to [the ALJ's] conclusion." *Scott*, 297 F.3d at 595; *see also Suide v. Astrue*, 371 Fed. Appx. 684, 690 (7th Cir. 2010) (holding that without the treating physician's opinion, which was given little weight, the ALJ's RFC finding that Plaintiff could stand or walk six hours in a typical work day represented a "troubling . . . evidentiary deficit."). If the ALJ included this limitation based on Dr. Sweeney's observation that she needed to change position as needed, then the ALJ should reconsider how much weight his opinion warrants and whether his finding that Plaintiff was in discomfort when she transitioned from sitting to standing should be incorporated into the RFC.

In addition, Plaintiff argues that the ALJ failed to consider her use of prescribed pain medication, either ignoring evidence that suggested that the side effects of those medications could directly affect her ability to work in terms of their impact on her concentration, persistence, and pace in the work-place, or failing to explain how those limitations were incorporated into her RFC. In this case, the ALJ failed to even mention Plaintiff's pain medications– or apparently– to consider the side effects those pain medications have on Plaintiff's ability to maintain competitive employment, despite the requirement that she do so. *See* SSR 96-7p,*7 (including "side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" as one of the types of evidence "that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements") (citing 20 CFR 404.1529(c) and 416.929(c)) (emphasis added). As such, the Court cannot conclude that the ALJ evaluated all of Plaintiff's limitations that may affect her ability to work. *Villano v. Astrue*, 556 F.3d 558, 563 (7th

Cir. 2009) (remanding in part because "[i]n determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling.") (citing S.S.R. 96-8p; *Golembiewski*, 322 F.3d at 917); *see also Underwood v. Colvin*, No. 2:11-CV-354-JD-PRC, 2013 WL 2420874, at *2 (N.D. Ind. May 30, 2013) ("While it is true that the ALJ need not specifically include limitations on concentration, persistence and pace in the RFC finding, . . . the requirement that the ALJ 'consider' such limitations has certainly been interpreted to mean that a real 'evaluation' of the effect of those limitations on the claimant's ability to work must take place. Here . . . the ALJ did not include those findings in the RFC; did not explain why or how those findings were incorporated into the RFC as otherwise written; and in fact did not give any indication that those findings were considered or evaluated at all in arriving at the RFC.") (citations omitted).

This matter is being remanded for a new RFC. On remand, the ALJ is directed to fully consider the combination of all of Plaintiff's impairments, and to draw a logical bridge from her impairments to their incorporation into the RFC.

3. Vocational Expert Testimony

Plaintiff argues that the ALJ's flawed RFC assessment caused her to pose a flawed hypothetical to the VE. When an ALJ relies on testimony from a VE to make a disability determination, the ALJ must incorporate all of the claimant's limitations supported by medical evidence in the record. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see also Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) ("Furthermore, to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the claimant suffers.") (citation omitted).

In this case, the ALJ posed a hypothetical to the VE that addressed whether an individual who could perform no greater than sedentary work while alternating between sitting and standing at least ten minutes every hour could perform Plaintiff's past work as a document preparer. Plaintiff argues that the hypothetical question was insufficient because it did not address whether Plaintiff could maintain focus and attention between sitting and standing in light of Dr. Sweeney's observation that Plaintiff transitions from sitting to standing in obvious discomfort. The case is being remanded for other reasons as described above, and new VE testimony will need to be obtained based on the appropriate RFC findings. The ALJ is cautioned that she must incorporate all relevant limitations in his questioning of the VE.

4. Relief

Plaintiff also requests that the Court reverse the Commissioner's decision and remand for an award of benefits. However, an award of benefits is not proper when there remain outstanding factual issues, *Briscoe*, 425 F.3d at 356, and the record does not yet support a finding of disability. *Allord v. Asture*, 631 F.3d 411, 417 (7th Cir. 2011). In this case, that the ALJ failed to properly weigh the evidence of Dr. Sweeney does not support a finding by this Court that the evidence demonstrates that Plaintiff is disabled under the Social Security Act. *See Clifford*, 227 F.3d at 869 (reasoning that a court in its review of the entire administrative record does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of SSA). On remand, the ALJ must review the record and fully explain how all of Plaintiff's limitations are accounted for, supported by evidence, and incorporated by into her RFC. Because the ALJ has not properly weighed all the relevant evidence, this can only be resolved through a remand for further proceedings.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Opening Brief [DE 19] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 29th day of March, 2016.

                                                 s/ John E. Martin
                                                MAGISTRATE JUDGE JOHN E. MARTIN
                                                UNITED STATES DISTRICT COURT

cc:     All counsel of record